IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JO ANNE PENA,

    **Plaintiff,**

    vs.                                                                                       Civ. No. 21-1095 KK/JFR

**THE BOARD OF COUNTY**
**COMISSIONERS FOR THE**
**COUNTY OF SANTA FE,**
**NEW MEXICO,**

    **Defendant.**

## MOTION TO ENFORCE SETTLEMENT AGREEMENT[1]

COMES NOW Defendant, by and through its undersigned counsel of record, the New Mexico Association of Counties, and respectfully motions this Court to enforce the settlement agreement reached by the parties during a settlement conference, thereby bringing this case to a close, and relieving Defendant from incurring additional unnecessary fees and expenses. As set forth below, enforcement of the settlement agreement is appropriate pursuant to Tenth Circuit and New Mexico law.

## FACTS

This motion involves a routine settlement agreement related to the plaintiff's employment discrimination claims. The parties met and agreed to settle this case on February 9, 2022, in a Rule 16 Settlement Conference conducted via Zoom before the Honorable John F. Robbenhaar. Both parties were represented by counsel. At the conference, the parties indicated that the terms of the settlement agreement were satisfactory and would bring this case to a close. *See* Doc. 18. Not only

---

[1] Pursuant to LR 7.1 Defendant sought concurrence by Plaintiff's counsel prior to the filing of this motion. Plaintiff's counsel was unavailable; therefore, it is unknown if Plaintiff opposed this motion.

counsel, but Plaintiff herself explicitly agreed to the settlement terms on the record in a portion of the settlement conference that was recorded. Plaintiff agreed that she was agreeing to the settlement terms voluntarily and without duress. The only remaining steps were for Plaintiff to physically sign the drafted release and for the parties to submit the final closing documents for the Court's review. Closing documents were initially due to the Court on March 11, 2022. However, such documents could not be submitted because Defendant had not yet received a signed release from Plaintiff. On March 14, 2022, the Parties filed a joint motion to extend the deadline to submit these closing documents. However, plaintiff's counsel stated that, after numerous attempts, he has been unable to get Plaintiff to respond to him or to sign the release. Therefore, on April 14, 2022, the Court held a status conference to discuss these issues and figure out the best course of action going forward. Unfortunately, even after the status conference, Plaintiff's counsel was still unable to communicate with Plaintiff or obtain her signature on the release. Thereafter on May 9, 2022, the Court held a follow-up settlement conference which established that Plaintiff Jo Anne Pena has ceased all communication with her counsel since the settlement agreement occurred and as such, the parties are unable to finalize the closing documents necessary to bring this case to a close. Due to the inability to reach the plaintiff regarding the already agreed-upon settlement, it is proper for the Court to intervene and enforce the unsigned settlement agreement.

## **ARGUMENT**

The courts have the power to "summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). A court may enforce a settlement agreement "if there is an enforceable contract." *Johnson v. Utah State Tax Com'n*, 229 F.3d 1163, *1 (10th Cir. 2000). Issues involving the formation, construction, and enforceability of a settlement agreement are resolved by applying

state contract law, even when the underlying cause of action is federal. *Id. See also Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004). In New Mexico, public policy "encourages settlement agreements, and the courts have a duty to enforce them." *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 19, 131 N.M. 450. Generally, courts "look favorably when parties resolve their disputes, and as a result, hold such agreements in high regard and require a compelling basis to set them aside." *Builders Contract Interiors, Inc. v. Hi-Lo Indus, Inc.,* 2006-NMCA-053, ¶ 7, 139 N.M. 508. To set aside or void a written settlement or release, "there must be evidence of misrepresentation, fraud, undue influence, coercion or mutual mistake, and such evidence must be clear and convincing." *Quintana v. Motel 6, Inc.*, 1984-NMCA-134, ¶ 4, 102 N.M. 229. However, the "absence of a formal, written agreement" is not always itself fatal to the existence of a contract. *Talbot v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 13, 138 N.M. 189. In fact, "except for statutory enactments which require a writing as a precondition to enforceability… there is no difference between oral and written contracts." *Id.* (quoting Richard A. Lord, Williston on Contracts § 1:16, at 39 (1990)).

New Mexico policy "favor[s] the settlement of disputed claims," and discourages repudiation of valid contracts unless they "clearly contravene some law or rule of public morals." *Whitaker v. Becerra*, No. 18-CV-1046-KG-JFR, 2021 WL 5122067, at *8 (D.N.M. Nov, 4, 2021). In *Whitaker*, the court considered a plaintiff's motion to throw out or invalidate the verbal acceptance of a settlement agreement. *Id.* at *1. In that case, the settlement conference was conducted remotely via Zoom which meant the settlement agreement was not readily available to be signed by the plaintiff. *Id.* at *2. Rather, the agreement would later be shared with the plaintiff so that she could give her signature. *Id.* During the conference, the plaintiff had agreed to a settlement of $650,000 to dismiss all of the claims against the defendants. *Id.* at *1. In an exchange

3

with the judge overseeing the settlement conference, the plaintiff stated her voluntary oral assent to the agreement. *Id.* at *2. However, the plaintiff refused to sign the agreement once it was received and stated that it should be considered null and void because she disagreed with the final substance of the document and the process by which it was created. *Id.* at *2-*3. However, the Court concluded that a valid settlement agreement had been formed and was enforceable. *Id.* at *3. The court reasoned that in New Mexico, the courts have enforced settlement agreements where parties had orally consented on the record but later refused to sign and sought to repudiate the agreement. *Id.* ¶ *3. (Citing *Herrera v. Herrera*, 1999-NMCA-034, ¶ 16, 126 N.M. 705 (holding that a husband's statements at a settlement conference that evidenced agreement to oral terms of a separation agreement was sufficient to enforce despite his refusal to sign and notarize). Therefore, absent any viable defense to the final contract, the unsigned settlement agreement was enforceable.

As illustrated in the *Whitaker* case, settlement agreements that are entered into orally on the record but remain unsigned have still been considered valid, enforceable agreements under New Mexico law. Similar to the *Whitaker* case, the parties in this matter also have an unsigned final settlement agreement that has been previously discussed and agreed upon within a Rule 16 settlement conference via Zoom on February 9, 2022. At that conference, the plaintiff gave her affirmative consent to be bound by this agreement and to bring this case to a close with the defendant. The main difference here is that unlike the *Whitaker* case, the plaintiff is actually not formally objecting to the validity of this settlement agreement at all, rather she has simply ceased communications with her counsel. While this is somewhat of a strange situation, New Mexico case law is clear that a valid contract exists where there was an offer, acceptance, consideration, and mutual assent, which was established by the conclusion of the February 9, 2022, settlement conference. The terms of the agreement were confirmed by both parties through the Court and then

counsel for both parties acted together to prepare the final settlement agreement documents. The fact that the plaintiff is now refusing to communicate with her counsel does not invalidate this binding agreement and there are no public policy concerns related to contract formation which would warrant the continuation of this case. As such, this case should be treated similarly to that of *Whitaker* and the settlement agreement should be considered valid and enforceable.

## CONCLUSION

WHEREFORE, for the above stated reasons Defendant respectfully requests that this Court enter an Order enforcing the settlement agreement reached through the Rule 16 Settlement Conference and dismiss Plaintiff's case with prejudice. Defendant also respectfully requests that the Court award Defendant its reasonable costs and attorney fees incurred on this matter since the settlement was reached, to be deducted from the proceeds paid to Plaintiff.

Respectfully Submitted,

NEW MEXICO ASSOCIATION OF COUNTIES

*/s/ Brandon Huss*
BRANDON HUSS
DAVID ROMAN
111 Lomas Blvd. Ste. 424
Albuquerque, New Mexico 87102
(505) 820-8116
*Attorneys for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2022, I caused a true and correct copy of the foregoing to be filed electronically through the CM/ECF system, which caused all counsel of record to be served, as noted on the notice of electronic filing.

*/s/ Brandon Huss*
Brandon Huss